Louis Otto SPIDLE, Petitioner,

v.

Harold R. SWENSON, Warden, Missouri State Penitentiary, Jefferson City, Missouri, Respondent.

Civ. A. No. 18136–3.

United States District Court,
W. D. Missouri, W. D.

April 15, 1970.

Philip Schwarz, Legal Aid & Public Defender Society, Kansas City, Mo., for petitioner.

Gene Voigts, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## ORDER GRANTING WRIT OF HABEAS CORPUS.

BECKER, Chief Judge.

Petitioner, a state convict confined in the Missouri State Penitentiary, petitions this Court for a writ of federal habeas corpus invalidating his state conviction for assault with intent to kill with malice.

Petitioner originally presented his contentions in this Court in his petition for habeas corpus in Spidle v. Swenson (W.D.Mo.) Civil Action No. 17886–3. After the entry of a show cause order, response to the show cause order and petitioner's traverse therein, the cause was dismissed without prejudice at petitioner's request. Petitioner has now refiled the same petition under the above number. Leave will therefore be granted to proceed in forma pauperis.

Petitioner was originally tried on an information charging assault with intent to kill with malice and convicted by a jury in the Circuit Court of Buchanan County of the offense of assault with intent to kill without malice. Petitioner states that he was sentenced on that conviction to a term of five years' imprisonment; that he appealed from the judgment of conviction and imposition of sentence to the Missouri Supreme Court; that, on appeal, the Missouri Supreme Court reversed the conviction and sentence for failure of the trial court to excuse a juror for cause and remanded the case to the state trial court for a retrial (State v. Spidle, Mo., 413 S.W.2d 509); that petitioner was again tried in the state trial court and found guilty by a jury of the greater offense of assault with intent to kill with malice; that petitioner did not appeal that judgment of conviction or imposition of sentence;

that he filed a motion to vacate sentence in the state trial court under Missouri Criminal Rule 27.26, V.A.M.R., on September 25, 1968; that the state trial court overruled the motion to vacate; that petitioner appealed the overruling of the 27.26 motion to the Missouri Supreme Court, which affirmed the trial court judgment on November 10, 1969 (Spidle v. State, Mo., 446 S.W.2d 793); and that no other applications, motions or petitions have been filed by petitioner with respect to this conviction.

Petitioner states the following as grounds for his contention that he is unlawfully in the custody of the respondent:

"Petitioner was charged in the Buchanan County Circuit Court with assault with intent to kill with malice aforethought. A jury found him guilty, by verdict returned June 8, 1965 of the lesser included offense of assault without malice.

"Petitioner's punishment was fixed at five years imprisonment. On appeal, the conviction was reversed because of error in the trial court's failure to excuse a juror for cause. State v. Spidle, Mo.Sup., 413 S.W.2d 509. Upon a second trial on the original information, a jury on December 14, 1967 found the defendant guilty of assault with intent to kill with malice and fixed the punishment at eight years imprisonment. No appeal was taken from this sentence and the defendant entered the Missouri State Penitentiary on March 29, 1968.

"Petitioner contends that he has been denied his constitutional right under the United States Constitution, Fifth Amendment, not to be placed in jeopardy twice for the same offense by the actions of the Circuit Court of Buchanan County, Missouri. Moreover, petitioner contends that he has been denied his right under the United States Constitution, Fourteenth Amendment, to equal protection under the law and to due process of law by

action of the Buchanan County Circuit Court."

Petitioner thus claims that his retrial on a charge of assault with intent to kill with malice, after the first verdict of a jury finding him guilty only of assault with intent to kill without malice (and thus, impliedly, acquitting him of the offense of assault with intent to kill with malice) was in direct violation of his Fifth Amendment right not to be placed twice in jeopardy for the same offense under the 1969 ruling in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2506, 23 L. Ed.2d 707. Petitioner also contends that the greater sentence assessed against him following his conviction at his second trial violates the principles recently pronounced by the United States Supreme Court in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656.

At the outset it is noted that in the *Benton* case the accused was acquitted of larceny at the first trial and convicted of larceny at the second trial, presenting a clear cut case of former (or double) jeopardy.

The case at bar presents a less clear violation of the double jeopardy rule because the petitioner was convicted of assault with intent to kill without malice at his first trial, and of the greater offense of assault with intent to kill with malice aforethought at his second trial. The difference in this and the *Benton* case is not one of principle but of degree. Under the federal standards, enunciated in *Benton,* conviction of a lesser included offense is in legal effect acquittal of the greater offense. See 5 Wharton's Criminal Procedure § 2131, p. 325 (1957 ed.). This federal standard is applicable to the states under the *Benton* case.

With respect to the first contention, the Missouri Supreme Court, on the 27.26 appeal, found that Benton v. Maryland, *supra,* if applicable, would have precluded petitioner's retrial on the charge of assault with intent to kill with

malice, after the jury earlier found him guilty of the lesser offense, assault with intent to kill without malice, after it had been instructed on the greater offense, also. The Missouri Supreme Court found Benton inapplicable to petitioner's case, assuming that Benton had no retroactive application. Then the Missouri Supreme Court proceeded to consider the three criteria for determining whether decisions were retroactive. These criteria were set forth in Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199, as follows: (1) the purpose to be served by the new standards, (2) the extent of the reliance by law enforcement authorities on the old standards and (3) the effect of retroactivity on the administration of justice. With respect to criteria (2) and (3), the Missouri Supreme Court concluded that the reliance of Missouri law enforcement authorities on the Missouri Constitutional provision had been complete since the 1880 decision in State v. Simms, 71 Mo. 538; and that since 19 states permit retrial for the greater offense, the administration of justice would be severely hampered by applying the Benton standard retroactively.

 With respect to the first criterion, the purpose of the Benton standard, the Missouri Supreme Court reasoned as follows:

"The purpose of the Benton decision is to make applicable throughout the United States 'a fundamental ideal in our constitutional heritage.' 395 U.S. 784, 794, [89 S.Ct. 2056, 23 L.Ed.2d 707]. The court so stated, in equating the right recognized in Benton, with the right of trial by jury, held in Duncan v. Louisiana, 391 U.S. 145, 149, [88 S.Ct. 1444, 20 L.Ed.2d 491], to be 'fundamental to the American scheme of justice.' However, as above noted, the court declined, in DeStefano v. Woods, 392 U.S. 631, [88 S.Ct. 2093, 20 L.Ed.2d 1308], to apply Duncan retroactively. The supreme court's analogizing the fundamental nature of the rights involved in Duncan and Benton justifies the conclusion that

the purpose to be served by Benton does not require its retroactive application." 446 S.W.2d at 795.

In Benton, however, the United States Supreme Court equated Benton and Duncan v. Louisiana, supra, only generically, in that they both protected rights "fundamental to the American scheme of justice." This was presented by the United States Supreme Court, in Duncan and Benton, as the necessary condition to determine the binding character of federal standards upon the States through the applicability of the Fourteenth Amendment. The necessity that the right be "fundamental," then, is not decisive. Accordingly, the equation of Duncan and Benton in this respect was not determinative of the issue of retroactivity. This is especially true in the light of the Supreme Court's pronouncement in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, 889, that the "choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved." In Benton, by contrast, the United States Supreme Court compared the principles enunciated in Benton and those set forth in the case of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799:

"Palko [v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288, which held that the double jeopardy provision was inapplicable to the states and which Benton overruled] represented an approach to basic constitutional rights which this Court's recent decisions have rejected. It was cut of the same cloth as Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942) the case which held that a criminal defendant's right to counsel was to be determined by deciding in each case whether the denial of that right was 'shocking to the universal sense of justice.' Id., at 462, [62 S. Ct., at 1256], 86 L.Ed. at 1602. It relied upon Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908), which held that the right against compulsory self-incrimination

was not an element of Fourteenth Amendment due process. Betts was overruled by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963); Twining, by Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)." 395 U.S. at 794, 89 S.Ct. at 2062, 23 L.Ed.2d at 716.

The favorable comparison of the principles of *Benton* with the case of Gideon v. Wainwright is decisive in determining the retroactivity of *Benton,* when the viewer considers the following later consideration of *Gideon* in relation to retroactivity in Johnson v. New Jersey, *supra.* After stating that the reason for not granting retroactivity in cases like Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, reh. den. 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730, was that the purpose of rulings like *Griffin* was to discourage courts from "penalizing use of the privilege against self-incrimination" (384 U.S. at 727, 86 S.Ct. at 1778, 16 L.Ed.2d at 889), the Court continued:

> "As Linkletter and Tehan acknowledged, however, we have given retroactive effect to other constitutional rules of criminal procedure laid down in recent years, where different guarantees were involved. For example, in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R. 2d 733 (1963), which concerned the right of an indigent to the advice of counsel at trial, we reviewed a denial of habeas corpus. Similarly, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964), which involved the right of an accused to effective exclusion of an involuntary confession from trial, was itself a collateral attack. In each instance we concluded that retroactive application was justified because the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.' Linkletter v. Walker, 381 U.S., [618] at 639, [85 S.Ct. 1731, at 1743],

14 L.Ed.2d [601] at 614; Tehan v. [United States ex rel.] Shott, 382 U. S., [406], at 416, [86 S.Ct. 459, at 465], 15 L.Ed.2d at 460." 384 U.S. at 727, 86 S.Ct. at 1778, 16 L.Ed.2d at 889.

Since the decision on the issue of retroactivity by the Missouri Supreme Court, two United States Courts of Appeals have held the *Benton* rule to be retroactive. Booker v. Phillips (C.A.10) 418 F.2d 424; Galloway v. Beto (C.A.5) 421 F.2d 284. It was unfortunate that the recent controlling opinions of the United States Courts of Appeals for the Tenth and Fifth Circuits were not published when the Missouri Supreme Court handed down its opinion affirming petitioner's conviction on November 10, 1969. These recent federal decisions have agreed that the rule of *Benton* has retroactive application. On November 12, 1969, in the case of Booker v. Phillips, *supra,* the Tenth Circuit Court of Appeals announced the retroactivity of *Benton* in that Circuit in the following language:

> "The purpose of the rule announced in Benton, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. * * *
>
> "The extent of reliance by law enforcement officials and the effect on the administration of justice—the second and third factors to be considered —also suggest that Benton should be given retroactive effect. The element of reliance is not persuasive because the case overruled by *Benton*, Palko v. Connecticut, 302 U.S. 319, [58 S.Ct. 149, 82 L.Ed. 288] (1937), has been under serious attack and has been rejected by several courts.

"In sum, we conclude that *Benton* is to be given retroactive effect so as to require the application of federal double jeopardy standards to previous state criminal convictions. It follows then, as stated above, that appellant's reprosecution for first and second degree murder was constitutionally invalid." 418 F.2d at 427.

More recently, the Fifth Circuit Court of Appeals, in Galloway v. Beto, *supra,* held *Benton* to be retroactive. After noting the three factors by which retroactivity is to be determined, listed in Stovall v. Denno, *supra,* that court continued:

"This is not an exclusionary rule aimed at * * * unlawful police practice, such as * * * Linkletter v. Walker, 381 U.S. 618, [85 S.Ct. 1731, 14 L.Ed.2d 601] * * * denies retroactive effect * * *.

"The case at bar is entirely unrelated to police practices * * *.

"Reliance by state courts is important in the third factor, the impact of retroactivity on the administration of justice in the states. Impact may be measured by two criteria—number of convictions which would have to be reopened, which depends on how frequently the states have relied on the old standard, and other burdens on the state courts. Reversals for failure to comply with Benton standards should not be frequent since 'every state incorporates some form of the prohibition in its constitution or common law.' * * *

"Even if these latter two factors cut more strongly than they do in favor of prospective application only, * * * '[t]he fundamental nature of the guarantee against double jeopardy can be hardly doubted.' * * *." 421 F.2d at 286.

Further, the question of retroactivity of *Benton* has been conclusively resolved by the Supreme Court of the United States in the recent opinion in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (April 6, 1970), wherein it was stated that:

"There can be no doubt of the 'retroactivity' of the Court's decision in Benton v. Maryland. In North Carolina v. Pearce, 395 U.S. 711, [89 S.Ct. 2072, 23 L.Ed.2d 656], decided the same day as *Benton,* the Court unanimously accorded fully 'retroactive' effect to the *Benton* doctrine." 397 U. S. at 437, note 1, 90 S.Ct. at 1191, 25 L.Ed.2d at 472.

There is a related secondary consideration of principles of double jeopardy arising from the greater punishment in the second trial governed by North Carolina v. Pearce, *supra.* It is not necessary to reach this question because of the disposition of the primary question based on the nature of the two offenses of which petitioner was convicted.

For the foregoing reasons, it is

Ordered that petitioner be, and he is hereby, granted leave to proceed in forma pauperis. It is further

Ordered that the writ of habeas corpus be, and it is hereby, granted and the conviction of petitioner for assault with intent to kill with malice aforethought is vacated and annulled. It is further

Ordered that the issuance of the writ be, and it is hereby, stayed for 90 days, unless further extended by order of Court, to give the State of Missouri an opportunity to grant petitioner a new trial in which he will be retried only on a charge of assault with intent to kill without malice. If such a trial is commenced within the time of the stay, the writ will accordingly be denied.